**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VICTOR HEWITT,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| vs. | : | NO. 12-cv-312 |
| | : | |
| **JAIME LUQUIS,** | : | |
| **Defendant.** | : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                   **August 27, 2012**

Plaintiff Victor Hewitt's claim arises from an incident in which Cedric Sutton, a Community Corrections Officer, brutally attacked him as he was walking past the Community Corrections Center in Allentown, Pennsylvania. Hewitt filed an amended complaint, alleging that Jaime Luquis, the Director of the Center, maintained a custom, policy, and practice that resulted in violations of Hewitt's Fourth and Fourteenth Amendment rights and 42 U.S.C. § 1983. On March 6, 2012, Luquis filed a motion to dismiss the amended complaint. For the reasons set forth below, I will grant the motion without prejudice.

**I.    Background**

On or about November 17, 2010, around 9:50 p.m., Plaintiff Victor Hewitt ("Hewitt" or "Plaintiff") was walking past the Community Corrections Center in Allentown, Pennsylvania. (Am. Compl. at ¶¶ 4, 9). At this time, Corrections Officer Cedric Sutton ("Sutton") stopped and attacked Hewitt without provocation. (Id. at ¶¶ 9, 13). During the attack, Sutton struck Hewitt about the body and ultimately threw him to

the ground. (Id. at ¶ 9). Hewitt's head hit the ground, causing a fractured skull, cerebral hemorrhage, and other injuries. (Id).

Defendant Jaime Luquis ("Luquis" or "Defendant") is an adult individual who operated, ran, and controlled the Allentown Community Corrections Center as the Director of the Pennsylvania Department of Corrections, Community Corrections Center, at the time of Sutton's attack. (Id. at ¶¶ 3, 5). In Count I of Hewitt's complaint, he alleges that Luquis maintained a "custom, policy, and practice" which caused violations of his Fourth and Fourteenth Amendment rights and 42 U.S.C. § 1983. (Id. at ¶ 14). His Fourth and Fourteenth Amendment claims are based on allegations of excessive force and false arrest. (Id. at ¶ 10). Hewitt contends that he has suffered not only severe and permanent physical injuries but also emotional injuries. (Id. at ¶ 15).

Luquis filed a motion to dismiss the complaint, and Hewitt filed a response. (Doc. No. 6; Doc. No. 9). For the reasons set forth, I will grant Defendant's motion.

## II.   Standard

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. Id.; see also D.P. Enters. v. Bucks Cnty. Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which he bases his claim. Conley, 355 U.S. at 47. Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. Id. The "complaint must allege facts suggestive of [the proscribed] conduct." Twombly, 550 U.S. at 564. Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Se. Pa. Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)). The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

In Fowler, 578 F.3d at 210, the United States Court of Appeals for the Third Circuit provided a two-part test to determine whether a claim survives a motion to dismiss. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (quoting Iqbal, 129 S.Ct. at 1949). "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1950). The plaintiff must show "the allegations of his or her

3

complaints are plausible." Fowler, 578 F.3d at 211 (quoting Phillips, 515 F.3d at 234-35). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Id. (quoting Iqbal, 129 S.Ct. at 1949). This "'plausibility' determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Fowler, 578 F.3d at 211 (quoting Iqbal, 129 S.Ct. at 1949).

## III. Discussion

The allegations set forth in Hewitt's complaint are insufficient to show that he has a plausible claim for relief under § 1983.[1]  Under § 1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Generally, in order to establish supervisory liability against a government official in his or her individual capacity under § 1983, a plaintiff must demonstrate that the official was personally involved in the alleged wrongs. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Personal involvement can be demonstrated by "allegations of personal direction or of actual knowledge and acquiescence." Id.; see also Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (holding that plaintiff's § 1983

---

[1] In his motion, Luquis first argues that the Eleventh Amendment bars federal court jurisdiction over him in his official capacity.  Doc. No. 6, pp. 5-6.  However, in Hewitt's response, he makes clear that he is suing Luquis in his individual capacity and not in his official capacity.  Doc. No. 9, p. 7 n.1.  Therefore, I only address Luquis' liability in his individual capacity.

4

claim failed because she did not plead facts sufficient to show a supervisor's personal involvement in either directing her job demotion or having "contemporaneous, personal knowledge of her transfer and acquiesced in it").

Hewitt's complaint does not allege sufficient facts to show Luquis had personal involvement in Sutton's assault on him. Hewitt does not suggest that Luquis personally directed Sutton to attack Hewitt or even had supervisory authority over him. The complaint also lacks facts indicating that Luquis had contemporaneous knowledge of the attack or acquiesced in it. In fact, the limited facts set forth in the complaint suggest that Hewitt's attack was spontaneous and committed on his own volition: Sutton's attack was "without provocation and unreasonable." The attack also occurred off prison grounds, as evidenced by Hewitt's statement in the complaint that he was "walking past the Community Corrections Center." Therefore, the complaint fails to adequately plead facts demonstrating any sort of personal involvement by Luquis and must be dismissed under that theory.[2]

Additionally, Hewitt's contention that Luquis is liable under § 1983 for his failure to train Sutton lacks the requisite factual support in the complaint. In limited circumstances, a supervisor can be liable under § 1983 in his or her individual capacity for failure to train. City of Canton, Ohio v. Harris, 489 U.S. 378, 387 (1989). Under this theory of liability, the plaintiff must show that the alleged "failure to train amounts to

---

[2] Additionally, as highlighted in Luquis' motion to dismiss, Luquis cannot be held liable under a theory of *respondeat superior*. Hewitt's complaint suggests Luquis is liable because he "operated, ran and controlled the Allentown Community Corrections Center and acted by and through his agents, servants, workmen, employees and/or other representatives." Am. Compl. at ¶ 5. Inferred from this statement is that Luquis is liable under a theory of *respondeat superior*—a theory which is not recognized in civil rights actions. See Monell v. Dep't. of Soc. Servs., 436 U.S. 658, 690-91 (1978) (stating municipalities cannot be held liable solely on a *respondeat superior* theory).

deliberate indifference to the rights of persons with whom the [untrained persons] come into contact." Id. at 388; Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989) (policymakers may be liable under § 1983 if they, with "deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm"). However, "[t]he scope of failure to train liability is a narrow one." Brown v. Muhlenberg Tp., 269 F.3d 205, 215 (3d Cir. 2001).

Therefore, the plaintiff must do more than argue that the "constitutionally cognizable injury would not have occurred if the superior had done more than he or she did." Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989). The plaintiff must specifically identify what the superior failed to do that shows his or her deliberate indifference. Id. "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" Id.

Here, Hewitt does not specifically identify what Luquis failed to do that shows his deliberate indifference. In his amended complaint, Hewitt alleges the following in support of Count I:

> 13. The Officer's treatment of Plaintiff was without provocation and unreasonable, and was a direct result of the custom, policy, and practice instigated, maintained and executed by defendant Jamie Luquis, acting under color of state law.

> 14. As the direct and proximate result of Defendant Jamie Luquis' custom, practice and policy and the aforesaid unlawful and malicious physical abuse of Plaintiff by the Officer, all committed under color of state law under authority as a Pennsylvania Department of Corrections Officer, the Plaintiff sustained grievous bodily harm and was deprived of his right to be secure in his person, against unreasonable seizure of his person and the use of excessive force, in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.
>
> 15. As the direct and proximate result of Defendant Jamie Luquis' custom, practice and policy and the aforesaid unlawful and malicious physical abuse of Plaintiff by the Officer, the Plaintiff suffered severe and permanent injuries and damages . . . .

These allegations are vague and conclusory and do not support a plausible claim for § 1983 liability for failure to train. Although Hewitt references Luquis' "custom, practice and policy," he does not provide even one fact supporting a specific practice or procedure that Luquis failed to employ.[3] Without identifying a specific practice or procedure that Luquis failed to employ, Plaintiff also does not sufficiently allege that the absence of that custom or procedure created an ultimate risk of his injury.

---

[3] Conversely, in Palma v. Atlantic County, the court found that the plaintiff had alleged facts sufficient to withstand a motion to dismiss. 53 F. Supp. 2d 743, 762 (D.N.J. 1999). There, the plaintiff was arrested at the Atlantic County Courthouse after he jokingly made a "Unabomber" reference while going through security. Id. at 749-50. He was charged with two indictable offenses: a third degree Terroristic Threat violation and a third degree Creating a False Public Alarm violation. Id. at 750. The plaintiff's charges were subsequently downgraded, and he was ultimately convicted of a Petty Disorderly Conduct Offense. Id. On appeal, the New Jersey Superior Court reversed his conviction, finding there was a total lack of proof to sustain the conviction. Id. at 750-51. The plaintiff filed a civil suit alleging, among other things, failure to train, supervise, or discipline, pursuant to the 'institutionalized' policy or custom of the County and Sheriff's department 'to support its [sic] officers blindly and prosecute any complaints filed by its [sic] officers to the fullest extent.' Id. at 762. The court found that this specific policy could be inferred from facts alleged in his complaint, such as the downgrading of his offenses, and the appellate court's reversal of his conviction. Id. at 762. As a result, the court held that the plaintiff's claim could go forward. Id. Here, unlike in Palma, Hewitt does not allege a specific custom, practice, or policy. He also puts forth no facts supporting an inference that Luquis maintained any kind of specific custom, practice, or policy that caused or permitted Sutton to attack Hewitt. Thus, Hewitt's vague references to a "custom, practice and policy" are distinguishable from the specific and factually supported policy alleged in Palma.

Further, Plaintiff does not provide facts indicating that Luquis was aware of an unreasonable risk of harm to individuals outside of the prison and was deliberately indifferent to such a risk.[4]  Under the deliberate indifference standard, for a supervisor to be liable for failure to train his or her subordinates, the plaintiff must (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.[5]  Brown, 269 F.3d at 216 (citing Sample, 885 F.2d at 1118).

In other words, the plaintiff must show "both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  Montgomery, 159 F.3d at 127. However, "[a] single constitutional violation can still provide the basis for municipal liability for failure to train, . . . but only where the 'need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights'

---

[4] A plaintiff can demonstrate deliberate indifference by showing that the failure to train has "caused a pattern of [constitutional] violations." See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (citing Bd. of Cnty. Comm'rs of Bryan Cnty. Okla. v. Brown, 520 U.S. 397, 408-09 (1997)).

[5] Additionally, "where a supervisor with authority over a subordinate knows that the subordinate is violating someone's rights but fails to act to stop the subordinate from doing so, the factfinder may usually infer that the supervisor 'acquiesced' in (i.e., tacitly assented to or accepted) the subordinate's conduct." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998); Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 (3d Cir. 1997).

that the policymaker's inaction amounts to deliberate indifference." Christopher v. Nestlerode, 240 F. App'x. 481, 489-90 (3d Cir. 2007) (quoting Canton, 489 U.S. at 391).

In Montgomery v. De Simone, the United States Court of Appeals for the Third Circuit held that the deliberate indifference standard was not met when the plaintiff brought a § 1983 failure to train claim against a police department after one of its officers arrested her and charged her with speeding, driving while intoxicated, and refusing to take a breathalyzer. 159 F.3d at 122. In that case, the plaintiff alleged that, after pulling her over, the arresting officer's "demeanor changed," and he "asked her if she liked policemen or dated them." Id. at 123. Her subsequent § 1983 failure to train claim was based on the contention that the arresting officer was "never trained not to sexually harass the female public and was not disciplined as a result of the incident involving [the plaintiff]." Id. at 127. The Third Circuit affirmed in favor of the police department, finding that the plaintiff pointed to no specific inadequacy in the police training program and failed to allege any action or inaction that could be construed as encouraging the officer's offensive actions. Id.

Here, similarly, Hewitt does not allege any action or inaction by Luquis that could be interpreted as encouraging Sutton's brutal attack. His complaint does not suggest that Luquis' failure to train has caused a pattern of similar constitutional violations or allege facts indicating that discovery could produce evidence of such a pattern. See Phillips, 515 F.3d at 234 (citing Twombly, 550 U.S. at 556) (stating complaint must contain facts to suggest that "discovery will reveal evidence of" element of claim). Moreover, the complaint does not allege facts sufficient to show that in light of Sutton's duties as a

9

corrections officer, the need for better training was so obvious that Luquis can be said to have been deliberately indifferent to the need.[6]

The complaint also does not provide any factual support that Luquis was responsible for the safe and proficient supervision and protection of Plaintiff, who was not a resident of the correctional institution, nor does the complaint allege Luquis knew of a risk of danger of unlawful assault and failed to act to prevent harm to Plaintiff. Plaintiff does not allege that Luquis should have known of any disciplinary or behavioral problems with Sutton. Finally, Plaintiff has failed to demonstrate the required causation between the failure to train and the assault. There is no allegation concerning how the need for more or different training was so obvious that Luquis could have been deliberately indifferent to the risk that a prison guard would go outside the facility and assault a private citizen.

## IV.     Conclusion

For the reasons stated above, I will grant Defendant's motion to dismiss without prejudice.

An appropriate Order follows.

---

[6] In City of Canton, the Court described a police officer's decision to use deadly force when chasing a fleeing suspect as an example of a situation in which a need for training is "so obvious" in light of the duties assigned to a police officer. 489 U.S. at 390 n.10. Because city policy makers know to a "moral certainty" that police officers will be required to arrest fleeing felons, the need to train police officers in the constitutional restrictions on the use of deadly force is so apparent that the failure to do so can be characterized as deliberate indifference. Id. Here, Sutton's decision to allegedly attack Hewitt, a citizen walking outside of the prison, is highly distinguishable from this example. Hewitt does not suggest that the duties assigned to a corrections officer necessitate training on how to handle potentially violent situations with citizens walking outside of the prison.